RENIGAR v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit.    June 3, 1909.)

No. 834.

1. INDICTMENT AND INFORMATION (§ 2*)—NECESSITY OF FORMAL PRESENTMENT—
   PROVISIONS OF FEDERAL CONSTITUTION—"INDICTMENT."
   The fifth constitutional amendment in providing that "no person shall
   be held to answer for a capital or otherwise infamous crime unless on
   a presentment or indictment of a grand jury" intends not merely an indict-
   ment in form, but a valid indictment found and presented according to
   the settled usage and established mode of procedure.
   [Ed. Note.—For other cases, see Indictment and Information; Cent.
   Dig. § 5; Dec. Dig. § 2.*
   For other definitions, see Words and Phrases, vol. 4, pp. 3551–3555.]

2. INDICTMENT AND INFORMATION (§ 11*)—RETURN INTO COURT.
   To constitute a valid indictment for an infamous crime in a federal
   court, it must have been publicly presented in open court, all the grand
   jurors being present and answering to their names, the indictment then
   being delivered by the foreman to the clerk of the court, and the fact
   entered of record.
   [Ed. Note.—For other cases, see Indictment and Information, Cent.
   Dig. § 62; Dec. Dig. § 11.*]

3. INDICTMENT AND INFORMATION (§ 11*)—VALIDITY—RETURN INTO COURT—
   "INDICTMENT."
   A paper purporting to be an indictment, indorsed as a true bill by the
   foreman of a federal grand jury, and delivered by him alone to the clerk
   of the court in the courtroom when court was not in session, is not an
   indictment, and confers no jurisdiction on the court to try the accused.
   [Ed. Note.—For other cases, see Indictment and Information, Cent.
   Dig. § 62; Dec. Dig. § 11.*]

4. INDICTMENT AND INFORMATION (§ 194*)—DEFECTS OF FORM—SCOPE OF CURA-
   TIVE STATUTE.
   Rev. St. § 1025 (U. S. Comp. St. 1901, p. 720), providing that "no indict-
   ment found and presented by a grand jury * * * shall be deemed
   insufficient * * * by reason of any defect or imperfection in matter
   of form only," has no application to an indictment not duly found and
   presented; the defect in such case not being one of form, but of sub-
   stance.
   [Ed. Note.—For other cases, see Indictment and Information, Cent.
   Dig. § 627; Dec. Dig. § 194.*]

In Error to the District Court of the United States for the Western
District of Virginia, at Lynchburg.

Waller R. Staples, for plaintiff in error.

Thomas L. Moore, U. S. Atty. (Samuel H. Hoge, Asst. U. S.
Atty., on the brief).

Before PRITCHARD, Circuit Judge, and MORRIS and BRAW-
LEY, District Judges.

BRAWLEY, District Judge.    The case is before us upon a writ of
error to review a judgment of the United States District Court for
the Western District of Virginia, whereby plaintiff in error was sen-
tenced to serve two years in the penitentiary at Atlanta, Ga., and to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pay a fine of $5,000, for the violation of section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676). There are numerous assignments of error, but we have deemed it unnecessary to consider any except that presented in defendant's bill of exceptions No. 15, wherein the facts relating to the return of the alleged indictment as certified by the court are as follows:

"Defendant's Bill of Exceptions, No. 15.

"Be it known that on the 21st day of March, 1908, after the above W. H. Renigar had been put upon trial, and several of the witnesses for the government had been examined, the clerk of this court entered an order herein, dated March 18, 1908, which said order reads as follows:

" 'Order as to Finding Indictment by Grand Jury.

" 'Entered March 18, 1908.

" 'The grand jury again appeared and reported (among others) the following indictment, to wit:

" 'Indictment vs. Pinkney Ayers, W. H. Renigar, W. H. Phillips and Jas. N. Bordwine, for vio. sec. 5440, R. S.

" 'A True Bill.'

"Which order was spread upon the order book, and for the first time known to counsel for the defendant on this the 21st day of March, 1908.

"Whereupon counsel for the defendant moved the court to correct said order, and to have the same to conform to the facts in reference to the alleged return of the alleged indictment, which said facts the court here certifies were as follows:

"On the 17th day of March, 1908, in the trial of the case of The United States v. Pinkney Ayers, the evidence was concluded on the afternoon of said March 17th, and court was adjourned until 10 o'clock a. m. March 18, 1908. On March 18th the judge of this court, in his office beneath the courtroom in the Federal Building in the city of Lynchburg, by appointment, met counsel for government and for the said Pinkney Ayers, at or about 9 o'clock a. m., and the said judge and counsel were engaged in the consideration of the instructions in the case of The United States v. Pinkney Ayers until about 2:30 o'clock p. m., with the exception of about one hour, during which they were separated and were at lunch. While the judge and counsel were so engaged, in the office of the judge beneath the courtroom, the paper herein, purporting to be an indictment, was by the foreman of the grand jury, who came alone into the courtroom, handed to the clerk at his desk in said courtroom, and by him marked 'Filed,' about 12 o'clock noon, while the judge and counsel for Pinkney Ayers, who were also of the counsel for the defendant in this case, were engaged in the judge's chambers; the judge of this court never having at that time been in the courtroom at any time during that day and did not make his appearance in the courtroom until about 2:30 o'clock p. m., an hour or more after the said filing of the said alleged indictment, since which appearance of the judge in the courtroom no proceedings have been had upon the said indictment, except such as appear of record herein.

"Counsel for defendant moved the court to correct its order above set forth, and to make the same conform to the state of facts herein set out, and at the same time stated to the court the fact that the indictment had been handed to the clerk and marked 'Filed' in the absence of the judge from the courtroom was known to counsel for defendant on the 18th day of March, 1908, at 1:30 o'clock p. m., and before pleading in abatement or in bar of the said alleged indictment; the court stating that the jury, clerk, marshal, and other officers of the court did meet in the courtroom at 10'clock a. m. on the 18th day of March, and were simply awaiting the return of the judge until he could finish the consideration of the instructions, which for convenience was being done in the judge's chambers, on the floor below; also that the court has, at a previous term, given instructions to the clerk and to the assistant district attorney that no further announcement should be made of an indictment found by the grand jury, and that the same, after indorsement, should be brought by the

foreman and handed to the clerk, who would thereupon mark the same 'Filed,' and proceed to make the regular order of entry; the reason for such instruction being that frequently parties who were indicted learned of the facts through the public announcement thereof in the courtroom before capiases for their arrest could be served, thus leading to difficulties in making arrests and to flights. But the court certifies that the defendant W. H. Renigar was in attendance upon this court on a bond not to depart without leave of court, and that nothing contained in the direction hereinbefore referred to in any manner applied to this particular case.

"It being conceived, therefore, by the judge of the court that the indictment was in legal effect returned into court and entered, and that the order as written by the clerk is in proper form, and as the court does not conceive that the defendant would be prejudiced by its refusal to now change the said order, did overrule the motion of counsel for defendant."

The fifth amendment to the Constitution provides that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury. As the statute authorized, and the court imposed a sentence of two years in the penitentiary, there can be no question that the defendant was charged with an infamous crime (Ex parte Wilson, 114 U. S. 426, 5 Sup. Ct. 935, 29 L. Ed. 89; Mackin v. United States, 117 U. S. 352, 6 Sup. Ct. 777, 29 L. Ed. 909), and a fundamental prerequisite to the defendant's trial was an indictment by the grand jury. Does a paper purporting to be an indictment upon which the foreman has indorsed "A True Bill," handed to the clerk, when the court is not in session, and when none of the grand jury except the foreman are present, conform to those settled usages and modes of proceeding which from the earliest days have governed the finding of indictments? 1 Chitty on Crim. Law, 324, describes the mode in which the grand jury returns the results of their inquiries to the court, by indorsing "A True Bill" if found, and "Not a True Bill." if rejected; and says:

"When the jury have made these indorsements on the bills, they bring them publicly into court, and the clerk of the peace at sessions, or clerk of assize on the circuit, calls all the jurymen by name, who severally answer to signify that they are present, and then the clerk of the peace or assize asks the jury whether they agreed upon any bills, and bids them present them to the court, and then the foreman of the jury hands the indictments to the clerk of peace or clerk of assize."

4 Blackstone, 306, also describes the functions of the grand jury and the methods of its proceedings, the necessity of 12 at least assenting to the accusation, and adds:

"And the indictment when so found is publicly delivered into court."

A later text-writer (1 Bishop on Crim. Procedure, § 869) says:

"When the grand jury has found its indictments, it returns them into open court, going personally in a body."

The Compilation, 22 Cyc. 210, cites cases from 15 states to support the proposition in the text that the "finding by a grand jury of a true bill and indorsement thereon to such effect are not alone sufficient to render it valid as an indictment, but it is found necessary that the bill should be presented or returned by the grand jury in open court." It would unduly extend this opinion to cite all of these cases, and we lim-

it ourselves to an examination of cases in this, the Fourth circuit, and, first, as to the practice in the state of Virginia, where this case arose.

In Commonwealth v. Cawood, 2 Va. Cas. 541, decided in 1825, Judge Brockenbrough, delivering the opinion of the court, says:

"The accusation in due and solemn form is as indispensable as the conviction. What, then, is the solemnity required by law in making the accusation? The bill of indictment is sent or delivered to the grand jury, who, after hearing all the evidence adduced by the commonwealth, decide whether it be a true bill or not. If they find it so, the foreman of the grand jury indorses on it 'A True Bill,' and signs his name as foreman, and then the bill is brought into court by the whole grand jury, and in open court it is publicly delivered to the clerk, who records the fact. It is necessary that it should be presented publicly by the grand jury, that is the evidence required by law to prove that it is sanctioned by the accusing body, and until it is so presented by the grand jury, with the indorsement aforesaid, the party charged by it is not indicted, nor is he required or bound to answer any charge against him which is not so presented. * * * The circumstance that this bill is indorsed a true bill and signed by David Campbell, foreman, affords no record proof that the bill was found by any grand jury, nor particularly by this grand jury. That gentleman may have been frequently the foreman of other grand juries in the same court, and, though we all know as men that he would not sign any paper as foreman without being really so, yet as judges we must require record proof that he was authorized by the grand jury of which he was foreman to make the indorsement now before us, and that he presented it in their presence in open court as the accusation against this individual."

The judgment of the court was that:

"As it does not appear from the records that the grand jury had presented any bill of indictment against Benjamin Cawood for murder, in open court, as a true bill, that the subsequent plea of not guilty does not cure the defect."

In the case of Price v. Commonwealth (decided in 1872) 21 Grat. (Va.) 859, the court, through Moncure, its president, referring to the Cawood Case, says:

"That is a case of the highest authority. It was argued with great ability by very able counsel, both for the commonwealth and the accused, and was decided by very able judges."

In Simmons v. Commonwealth, 89 Va. 157, 15 S. E. 387, decided in 1892, the court says:

"It still does not appear that the indictment was delivered in court by the grand jury, and its finding recorded. This omission is a fatal defect. No man can be tried for a felony in the courts of this commonwealth except upon an indictment of the grand jury, and the indictment to be valid must be presented in open court and the fact recorded. Until this is done the accused is not indicted. This was decided in Cawood's Case, nearly three-quarters of a century ago. * * * It was held to be essential to the validity of an indictment that it be publicly delivered in open court, and that the fact be recorded; that this is the evidence required by law to prove that it is sanctioned by the accusing body; and that until it is so presented the party charged by it is not indicted. * * * That case has always been regarded as settling the rule in this state."

In the state of West Virginia the Supreme Court in State v. Heaton, 23 W. Va. 778, decided in 1883, says:

"The solemnity required by law in making a criminal accusation is thus stated by the court in the Commonwealth v. Cawood, 2 Va. Cas. 541."

There follows a quotation from the opinion in that case which is cited above. "There is no question but that this correctly describes the regular and proper mode of proceeding in the institution and presentation of criminal charges, both in England and in this state."

In North Carolina, the Supreme Court in State v. Cox, 28 N. C. 445, decided in 1846, refers to the proper practice. There was contention there that the presentment (which was a case of misdemeanor) had not been signed by 12 of the body, and it was held that that was not necessary, and the court says:

"The bill, however, being the act of the jury, they ought in every instance to be in court when one is returned, and so in making a presentment, and to ascertain that they are present they ought always to be called by the clerk."

And in State v. Bordeaux, 93 N. C. 563, the court says:

"We believe a loose practice prevails in many of our courts with respect to the returns of bills of indictment into court by the grand jury. It is often the case that bills are carried into court by the foreman alone, but this is a practice to be condemned, because it is not the legal mode of proceeding. The law requires that the grand jury should make their returns in a body that the court may see that they as a body assent to the returns made."

No case has been cited from South Carolina, but the writer of this opinion, who had many years' experience as a prosecuting officer, in that state, can say that the invariable rule in that state, both in the state and in the federal courts, has been that a grand jury, when it has any presentments to make, comes into court, and the clerk calls the names of all of the grand jury. The clerk then asks the foreman if he has any presentments, and the bills are handed to the clerk and the result of the finding as to each bill is announced by the clerk in open court. It has not infrequently happened that a mistake in such announcement has been corrected by some grand juror present. That the practice has been as stated is referred to in State v. Creighton, 1 Nott & McC. (S. C.) 256, where objection was made to the finding of the grand jury in writing which had been publicly announced by the clerk in their presence, but not signed by the foreman, and the court says:

"It has long been the custom in this state for the foreman of the grand jury to sign their finding, and perhaps it would still be advisable to adhere to it, but I concur in the opinion that this being in writing, and having been publicly announced by the clerk, as is invariably the case, in the presence of the grand jury, is a sufficient guard against misconstruction or perversion, and, as there is no positive law requiring it, it is not essentially necessary to its validity that it should be signed by the foreman."

The overwhelming weight of opinion and authority is that it is essential to the validity of an indictment that it be presented in open court and in the presence of the grand jury.

One of the cases cited by the attorney for the government as establishing a different rule is Danforth v. State, 75 Ga. 614, 58 Am. Rep. 480, where it was held that the sworn bailiff is competent to make return in court of bills found by the grand jury. This is under a statute of Georgia, where a part of the oath of the bailiff of the grand jury is as follows:

"You do solemnly swear that you will * * * carefully deliver to that body all such bills of indictment or other things as shall be sent to them by the court, without alteration, and as carefully return all such as shall be sent by that body to the court."

In Sampson v. State, 124 Ga. 776, 53 S. E. 332, the Supreme Court of that state February 15, 1906, held as follows:

"An indictment must be returned into open court. Accordingly, when the judge of a superior court at 10 o'clock a. m. of a given day ordered that a recess of the session of the court for that day be taken from that time until 8:30 the next morning, and then left the courtroom, and did not return during the remainder of that day, an indictment returned during the afternoon of the same day by the bailiff of the grand jury to the clerk of the court while he was in the courtroom was not properly returned."

In its opinion the court refers to the practice which had always prevailed of grand juries returning indictments into open court until the adoption of the Code of 1882, after which it was held, as in Danforth's Case, that the bailiff might make such return, and says: "As under the old practice the grand jury was required to return indictments and presentments into open court, it follows that the bailiff must do likewise," citing Gardner v. People, 20 Ill. 430, where the court, after holding before a party can be tried on an indictment it must appear from the record that it was returned into open court, said:

"This requirement is proper for the protection of the citizen against being forced to defend himself against charges never acted upon or presented by a grand jury. If it were otherwise, by either accident or design, he might be compelled to make such defense."

And Goodson v. State, 29 Fla. 511, 10 South. 738, 30 Am. St. Rep. 135:

"The only recognized manner in which the findings of the grand jury can be authoritatively presented is in open court. Were the rule otherwise, it would render it possible for a designing and revengeful foreman of a grand jury to ruin any citizen by surreptitiously filing with the clerk in his office an indictment manufactured by himself alone upon which his fellow jurors had taken no action."

Very few cases are found which show the practice in the courts of the United States relating to the presentments of grand juries. In United States v. Butler, 1 Hughes, 457, Fed. Cas. No. 14,700, heard before Chief Justice Waite and Circuit Judge Bond, a motion was made by the defendants that they be not compelled to answer the indictment on the ground that it was not a legal instrument, as there had been no formal publication of the finding of the grand jury in court. Bond, Circuit Judge, stated that he remembered the circumstances of the finding of this indictment. It had been brought in by the grand jury. "The foreman had handed it to the clerk, by whom it was handed to the court for inspection, but afterwards it was handed back to the clerk for entry. The names of the grand jurors had been called out, and they had been asked if this was their finding and they had answered that it was, but the handing of the indictment to the clerk and the entry of it on the record was all the publication ever intended. It was not meant that the whole world should know who were indicted and for what offenses, because the accused could then escape." Chief

Justice Waite stated that he had never known any other practice. From this it clearly appears that the indictment had been brought into open court by the grand jury, and that their names had been called; the Chief Justice stating that he had never known any other practice.

In Crain v. United States, 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097, the record showed an indictment, the appearance of the accused in person and by his attorneys, an order by the court that a jury come to "try the issue joined," the selection of a jury who was sworn to try the issue joined and a true verdict render, the trial and verdict, finding the prisoner guilty; but did not show that the accused was ever formally arraigned. The verdict was set aside on that ground, and section 1025 of the Revised Statutes (U. S. Comp. St. 1901, p. 720) was considered. Justice Harlan, delivering the opinion of the court, says:

"Neither sound reason nor public policy justifies any departure from settled principles applicable in criminal prosecutions for infamous crimes. Even if there were a wide divergence among the authorities upon this subject, safety lies in adhering to established modes of procedure devised for the security of life and liberty, nor ought the courts in their abhorrence of crime, nor because of their anxiety to enforce the law against criminals, to countenance the careless manner in which the records of cases involving the life or liberty of an accused, are often prepared. * * * We may have a belief that the accused in the present case did, in fact, plead not guilty of the charges against him in the indictment, but this belief is not founded upon any clear, distinct, affirmative statement of record, but upon inference merely. That will not suffice. We are of opinion that the rule requiring the record of a trial for an infamous crime to show affirmatively that it was demanded of the accused to plead to the indictment, or that he did so plead, is not a matter of form merely, but of substance in the administration of the criminal law; consequently such a defect in the record of a criminal trial is not cured by section 1025 of the Revised Statutes, but involves the substantial rights of the accused. * * * The suggestion that the trial court would not have stated in its order that the jury was sworn to try and tried the issue joined unless the defendant plead, or was ordered to plead to the indictment, cannot be made the basis of judicial action without endangering the just and orderly administration of the criminal law. The present defendant may be guilty and may deserve the full punishment imposed upon him by the sentence of the trial court, but it were better that he should escape altogether than that a court should sustain a judgment of conviction of an infamous crime where the record does not clearly show that there was a valid trial."

Bishop, in his work on Criminal Procedure, § 131, defines an indictment as a "written accusation against a specified person or persons of some crime, the elements whereof it consists, made on oath, by not less than 12 of the grand jury, to be carried into court, and there become of record." Blackstone, 4 Comm., 309, says:

"The founders of the English law have with excellent forecast contrived that no man shall be called to answer the King for any capital crime unless upon the peremptory accusation of 12 or more of his fellow subjects, a grand jury, and that the truth of any accusation * * * should afterwards be confirmed by the unanimous suffrage of 12 of his equals and neighbours, i differently chosen and superior to all suspicion, so that the liberties of England cannot but subsist so long as this palladium remains sacred and inviolate, not only from all open attacks (which none will be so hardy as to make), but also from all secret machinations which may sap and undermine it by introducing new and arbitrary methods of trial. * * * And, however convenient these may appear at first (as doubtless all arbitrary powers and execution are the most convenient), yet will it be again remembered that de-

lays and little inconveniences in the forms of justice are the price that all free nations must pay for their liberty in more substantial matters. For these inroads upon the sacred bulwark of the government are fundamentally opposite to the spirit of our Constitution, and that, though begun in trifles, the precedent will gradually increase and spread, to the utter disuse of jurors in questions of the most momentous concern." Pages 349, 350.

Mr. Justice Wilson (3 vol. 363) says:

"Among all the plans and establishments which have been devised for securing a wise and uniform execution of the criminal laws, the institution of grand juries holds the most distinguished place. This institution is at least in the present times the peculiar boast of the common law. The era of its commencement and the particulars attending its gradual progress and improvement are concealed behind a thick veil of a very remote antiquity, but one thing concerning it is certain. In the annals of the world there is not found any institution so well adapted for avoiding all the inconveniences and abuses which would otherwise arise from malice and rigor from negligence or from partiality in the prosecution of crimes."

Judge King in Commonwealth v. Crans, 2 Clark (Pa.) 172, says:

"Let any reflecting man, be he layman or lawyer, consider the consequences which would follow if every individual could at his pleasure throw his malice or his prejudice into the grand jury room. * * * Into every quarter of the globe in which the Anglo-Saxon race have formed settlements they have carried with them this time-honoured institution, ever regarding it with the deepest veneration, and connecting its perpetuity with that of civil liberty. In their independent action the persecuted have found the most fearless protectors, and in the records of their doings are to be discovered the noblest stands against the oppressions of power, the virulence of malice, and the intemperance of prejudice."

Mr. Justice Field, in his charge to the grand jury (2 Sawy. 667, Fed. Cas. No. 18,255), says:

"In this country, from the popular character of our institutions there has seldom been any contest between the government and the citizen which required the existence of the grand jury as a protection against the oppressive action of the government. Yet the institution was adopted in this country, and has continued from considerations similar to those which give to it its chief value in England, and is designed as means not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it come from cause or be prompted by partisan passion or private enmity. No person should be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the highest crimes, unless this body consisting of not less than 16, or more than 23, good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is good reason for his accusation and trial. From these observations it will be seen, gentlemen, that there is a double duty resting upon you as grand jurors of this district—one, a duty to the government, or, more properly speaking, to society, to see that parties against whom there is just ground to charge the commission of crime should be held to answer the charge; and, on the other hand, a duty to the citizen to see that he is not subjected to prosecution upon accusations having no better foundation than public clamour or private malice."

He refers to the impression which widely prevails that the institution of the grand jury has outlived its usefulness, an impression which had been created from a disregard of those qualities and the facility with which it has unfortunately often been used as an instrument for the gratification of private malice, saying:

"There has hardly been a session of the grand jury of this court for years at which instances have not occurred of personal solicitation to some of its members to obtain or prevent the presentment or indictment of parties."

And, quoting from the charge of Judge King, above referred to:

"Let any reflecting man, be he layman or lawyer, consider the consequences which would follow if every individual could at his pleasure throw his malice or his prejudice into the grand jury room, and he will of necessity conclude that the rule of law which forbids all communication with grand juries engaged in criminal investigation, except through the public instructions of courts and the testimony of sworn witnesses, is a rule of safety to the community."

When the Constitution enumerated those guaranties intended for the security of personal rights, and among them that no person shall be held to answer for a capital or infamous crime unless on the presentment or indictment of the grand jury, it manifestly intended a valid indictment, found and presented according to those ancient rules and safeguards which the law and immemorial custom have provided for the conduct of grand juries. It did not mean a mere form of indictment, but it meant a formal accusation of the offense charged, of which at least 12 of the grand jury were satisfied of the truth, and publicly returned into court, indorsed as a true bill. Until and unless it is so presented, it is no indictment. The fundamental prerequisite to the trial of the defendant for the offense charged against him was an indictment by the grand jury. Every text-writer, from Chitty and Blackstone down to Bishop and Joyce, is in agreement as to the manner in which indictments should be found. They all agree that, when the grand jury has acted upon the bills submitted to them, they come publicly into court, their names are called, and the foreman hands the indictment to the clerk. It is not without reason that this formality is required and that the grand jury should be present when the indictment is presented to the court; for, before a man can be held to answer for a capital or infamous offense, at least 12 of the grand jurors must agree to the finding of a true bill. If the grand jury is present when the presentment is made, their assent is conclusively presumed, unless something to the contrary appears. If they are not present, there can be no such presumption.

As was said in Cawood's Case:

"It is necessary that it should be presented publicly by the grand jury; that is the evidence required by law to prove that it is sanctioned by the accusing body; and, until it is so presented by the grand jury, with the indorsement aforesaid, the party charged by it is not indicted, nor is he required or bound to answer any charge against him which is not so presented."

The foreman is not the representative of the grand jury. He is authorized to speak for it in its presence, when called on by the court to say whether the grand jury has any presentments to make. Any other rule would put it in the power of an individual who happened to be foreman of the grand jury to gratify personal or other malice by presenting in the form of an indictment for an infamous offense a person innocent of all crime, and subject him to the annoyance, expense, and infamy attendant upon such accusation. It is not enough to say that such a thing is improbable; that it is possible is sufficient

reason for adhering to those rules which have the sanction of time and immemorial usage.

That the court was not in session when this paper was handed to the clerk is admitted. The opening of a court is a solemn judicial act, and must be performed by the judge in person. The clerk is a mere ministerial officer, and without statutory authority can exercise no judicial function. As the court was not in session, it would be the same as if this paper had been handed to him on the street. As is well said by Mr. Justice Bradley:

"Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right as if it consisted more in sound than in substance. It is the duty of all the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments. Their motto should be 'Obsta principiis.'"

It is contended by the learned counsel for the government that this is a mere irregularity, and "relates to a defect or imperfection in matter of form only, not tending to the prejudice of the defendant, and is cured by section 1025 of the Revised Statutes." Bram v. United States, 168 U. S. 533, 18 Sup. Ct. 183, 42 L. Ed. 568; Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Caha v. United States, 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415, are cited in support of this contention. Examination of those cases shows that they fall far short of supporting the view that the case under consideration falls within the curative provisions of section 1025. That section provides that "no indictment found and presented by a grand jury * * * shall be deemed insufficient * * * by reason of any defect or imperfection in the matter of form only, which shall not tend to prejudice the defendant." The defect here is not a matter of form, but of substance—not that the indictment was imperfect in matter of form, but that, in fact, no indictment was found or presented by a grand jury, which is a jurisdictional prerequisite. If a valid indictment can be dispensed with, so may that providing for a trial by a petit jury, and, to use a phrase of Mr. Justice Harlan, a person charged with a crime involving life might be tried before a judge "upon a rule to show cause why he should not be hanged." In Frisbie v. United States, 157 U. S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657, a case much relied on by the government, the objection to the indictment was that it lacked the indorsement "A True Bill," and the signature of the foreman. The court held that as there was no mandatory provision in the federal statutes requiring such indorsement, and that the indorsement was no part of the charge against the defendant, and as the common practice in this country was that the grand jury "return into court only those accusations which they have approved, and the fact that they thus return them into court is evidence of such approval, the formal indorsement loses its essential character," and the defect was held to be upon matter of form only and was waived if the party went to trial without objections.

Joyce on Indictments, § 31, in considering the fifth amendment, says:

"It was manifestly designed and intended for the security of personal rights. It is an essential to the jurisdiction of the court, and, being a constitutional right of a party, cannot be waived by him so as to preclude him from subsequently setting up want of jurisdiction in the court to try him. A party cannot waive a constitutional right when its effect is to give the court jurisdiction."

And in section 32:

"So, where there has been no presentment of the grand jury, or bill of indictment, the fact that a person confessed in court to being guilty of a crime, which requires an indictment or presentment, confers no power upon the court to sentence him to imprisonment, and he can only be lawfully sentenced after he has been proceeded against in the manner provided in the Constitution."

The case before us falls within the reasoning of the opinion in Ex parte Bain, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849. In that case the grand jury found a true bill against Bain November 13, 1886, and the court, after argument upon a demurrer, ordered the indictment to be amended by striking out the words, "the Comptroller of the Currency and"; the court holding those words to be surplusage. More than a year afterwards Bain was arraigned, pleaded not guilty, was tried, and convicted. The case came before the Supreme Court upon a petition for a writ of habeas corpus, and the prisoner was discharged on the ground that the indictment upon which he was tried had not been found by the grand jury. Mr. Justice Miller in his luminous opinion reviews the fifth amendment to the Constitution, and considers the nature and value of the institution of the grand jury, citing with approval the remarks of Chief Justice Shaw of Massachusetts in Commonwealth v. Child, 13 Pick. 198:

"It is a well-settled rule of law that the statute respecting amendments does not extend to indictments; that a defective indictment cannot be aided by a verdict; and that an indictment bad on demurrer must be held insufficient upon a motion in arrest of judgment."

And saying, among other things:

"It has been said that, since, there is no danger to the citizen from the oppressions of monarchs or of any form of executive power, there is no longer need of the grand jury."

But, whatever force may be given to this argument, it remains true that the grand jury is as valuable as ever, in securing, in the language of Chief Justice Shaw in the case of Jones v. Robbins, 8 Gray (Mass.) 329, "individual citizens from open and public accusations of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of the grand jury, and in cases of high offenses it is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions"; and, concluding:

"We are of the opinion that an indictment found by a grand jury is indispensable to the power of the court to try the petitioner for the crime with which he was charged. It is of no avail under such circumstances to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the

crime if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be 'held to answer,' he was then entitled to discharge, so far as facts originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed, or a nolle prosequi had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence."

In United States v. Gale, 109 U. S. 65, 71, 3 Sup. Ct. 1, 5, 27 L. Ed. 857, the court held that, where a defendant pleads not guilty to an indictment and goes to trial without making objection to the mode of selecting the grand jury, the objection is waived. Mr. Justice Bradley, who delivered the opinion of the court, says:

"There are cases undoubtedly which admit of a different consideration, and in which the objection to the grand jury may be taken at any time. These are where the whole proceeding of forming the panel is void, as where the jury is not a jury of the court or term in which the indictment is found, or has been selected by persons having no authority whatever to select them, or where they have not been sworn, or where some other fundamental requisite has not been complied with."

And on page 72 of 109 U. S., page 6 of 3 Sup. Ct., 27 L. Ed. 857:

"We think that the doctrine of waiver applies as well to cases where the objection appears of record as where it appears by averment, and that it applies to all cases of impaneling the jury, but it does not apply to cases where the proceeding is wholly void by reason of some fundamental defect or vice therein."

In Hopt v. Utah, 110 U. S. 579, 4 Sup. Ct. 204, 28 L. Ed. 262, the court, after holding that it was not within the power of the accused to dispense with certain statutory requirements, says:

"The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his failure, when on trial and in custody, to object to unauthorized methods."

Thompson and Meriam on Juries, § 657, says:

"It is the general, and probably the universal practice to deliver all indictments to the court in the presence of the grand jury."

And in section 696:

"In his Treatise on Criminal Law, Mr. Chitty states that, when the indorsement 'A True Bill' is made upon the bill, it becomes a part of the indictment, and renders it a complete accusation against the prisoner. This must be understood with the qualification that the record further shows the indictment to have been publicly returned into court, as required by law. This recital is positively essential to establish the identity of the indictment found by the grand jury with that which appears in the record, and upon which the defendant is arraigned. The omission to make the proper entry of the return of the indictment cannot be cured by the production of a paper purporting to be the indictment duly indorsed and signed by the foreman of the grand jury, nor will this defect be cured by the defendant pleading upon the merits or by a verdict of guilty."

In Regina v. Heane, 9 Coxe, C. C., 433, Chief Justice Cockburn, says:

172 F.—42

"As regards the objection that the motion to quash cannot be made after plea pleaded, I think, if it is made to appear clearly that there was no jurisdiction, we have power to quash the indictment at any stage, and even for matter not apparent on the face of the indictment, brought to our notice by extraneous evidence upon affidavits."

We have been extremely reluctant to set aside the judgment in this case upon grounds which may appear technical, and for that reason have given unusual time to its consideration, and to an investigation of the practice in every state, where the institution of the grand jury is preserved. Nothing is more clear than that the "established mode of procedure" is for the grand jury to make its presentments publicly in open court all of the grand jurors being present and answering to their names. It follows that a paper purporting to be an indictment handed by the foreman to the clerk when the court is not in session, and, in the absence of the grand jury, is no indictment. This is not a question of irregularity, but of substantive law, based upon the direct terms of the constitutional guaranty that no man shall be "held to answer" for an infamous offense except on an indictment by a grand jury. The indictment—and that means of course a valid indictment found and presented according to the settled usage and established mode of procedure—is a prerequisite to the jurisdiction of the court to try the person accused, an indispensable condition and requirement, the absence of which renders the proceedings not simply voidable, but absolutely void.

The judgment of the court below must therefore be reversed. Reversed.