### UNITED STATES of America

v.

### Anthony V. VECCHIARELLO, Appellant.

### No. 75–1441.

United States Court of Appeals, District of Columbia Circuit.

Submitted without Argument Oct. 10, 1975.

Decided June 1, 1976.

**422**

Anthony V. Vecchiarello, pro se.

Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson, David W. Stanley and Robert E. Hauberg, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before McGOWAN and MacKINNON, Circuit Judges, and McMILLAN,* United States District Judge for the Western District of North Carolina.

Opinion for the court filed by District Judge McMILLAN.

McMILLAN, District Judge:

### PRELIMINARY STATEMENT

Anthony V. Vecchiarello, appellant, a disbarred lawyer, was tried in the United States District Court for the District of Columbia, along with his brother Louis, and Marino Maturo, on numerous counts of mail fraud, wire fraud and forgery. All the charges arose out of Vecchiarello's alleged practice of medicine in the District of Columbia under spurious medical credentials and without a lawful license. A jury found him guilty on a number of the counts and he was sentenced by District Judge John Lewis Smith, Jr., to serve one group of concurrent five-year sentences and another group of concurrent ten-year sentences consecutive to the five-year terms. He appealed and on November 22, 1971, without published opinion, the convictions were affirmed by this court. On April 6, 1972, he filed a motion for reduction of sentences; on April 25, 1972, the sentences were reduced to a maximum of eight years, and all sentences were ordered to run concurrently. A second motion for reduction of sentences was denied on November 20, 1974.

On November 22, 1974, Vecchiarello filed a motion under 28 U.S.C. § 2255 to dismiss the indictment and vacate the sentences for various reasons alleged. On November 23, 1974, he filed a motion requesting that Judge Smith, the trial judge, recuse himself. Petitioner also issued a subpoena for Judge Smith to testify at a hearing on his pending motion.

On January 22, 1975, the § 2255 motion and the motion for recusal came on for hearing. The appellant had brought a number of witnesses to testify on his § 2255 claims. However, because he had been subpoenaed to testify, Judge Smith declined to conduct the hearing, and certified the pending § 2255 motions to Chief Judge Hart.

Judge Hart did not conduct a hearing, but indicated that he would consider the motions and would notify the parties if and when a hearing was necessary.

Two days later, on January 24, 1975, without a hearing, Judge Hart summarily denied the § 2255 motion of November 22, 1974. Vecchiarello's later motion for reconsideration and his request for leave to appeal *in forma pauperis* were also denied.

On March 4, 1975, Vecchiarello filed an additional motion under § 2255, seeking to vacate the sentence, and moved to have Judge Hart disqualified. These motions were denied, as was an additional motion for leave to appeal *in forma pauperis*.

Subsequently Vecchiarello filed notice of appeal from the orders denying his two § 2255 motions; sought a writ of mandamus; sought to have Judges Tamm, Wilkey and McGowan, who had heard his direct appeal, disqualified; and renewed his § 2255 motions in the District Court.

Although the procedural record is a little hard to follow, it is more voluminous than complicated. Only the orders denying the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

§ 2255 motions were appealed. This opinion will therefore address itself to the groups of claims embraced in the § 2255 motion of November 22, 1974 (Motion I) and in the § 2255 motion of March 4, 1975 (Motion II).

### THE CLAIMS

I. *Attacks on the selection and composition of the grand and petit juries.*—Vecchiarello alleges (Motion I, Claims 1–8):

1. The use of the R. L. Polk Business Directory as the sole source of names for grand and petit jurors worked to his prejudice because it

(a) Excludes more than ⅘ of the population of the district;

(b) Excludes persons receiving public aid;

(c) Excludes unemployed transients and persons without established credit;

(d) Excludes whites because less than ⅕ of the District of Columbia residents are white;

(e) Fails to produce a proper "cross section."

2. Some other source or sources of jurors should be tapped.

3. There was no master plan for jury selection.

4. No female jury commissioners were employed.

5. The Jury Selection Act (Public Law 90–274) unconstitutionally delegates to the jury commission power which should be exercised by the judge.

6. The Jury Selection Act unconstitutionally excludes persons accused of major crimes.

7. Defendant was denied permission to inspect the jury commission's records.

8. The jury commission failed to determine what persons outside Polk's Directory might be qualified as jurors, and thereby failed to provide a fair cross-section of the community.

Although Vecchiarello alleges no specific prejudice to him based on these allegations, it can not be said as a matter of law that, if true, they state no basis for relief. Nevertheless, Vecchiarello may fairly be held to have waived any complaints about the grand jury and the petit jury composition and selection. He did not raise his claims regarding the grand jury before trial, as required by the Federal Rules of Criminal Procedure, Rule 12(b)(2), nor did he raise claims regarding the petit jury or the grand jury at any other stage of the prosecution. These claims, first made in this court after conviction, come too late. As to the grand jury, *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), appears to control. As to the petit jury, see *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963). See also, *Paige v. United States,* 493 F.2d 22 (9th Cir. 1974) (collateral attack on selection and composition of petit jury barred).

II. *Direct attacks on the indictment.*—Claims 9 and 10(b) of Motion I allege prejudice because the grand jury never actually voted on the indictment, but merely made a presentment which allegedly was lost in the United States Attorney's files or somewhere else, and can not now be located, all allegedly in violation of the Fifth, Sixth and Fourteenth Amendments and Rule 6 of the Federal Rules of Criminal Procedure. Motion I, Claim 10(b), also alleges error in the use before the grand jury by the prosecuting attorney of a mug shot of the defendant with numbers at the bottom of the photograph. These alleged defects in the procedures before the grand jury are waived under the principles of *Davis v. United States, supra.*

III. *Attacks on the prosecution.*—Vecchiarello alleges:

1. *Withholding of favorable evidence* (Motion I, Claims 11, 12 and 14(c); Motion II, Claim 5). Petitioner alleges (Claim 11) that the prosecutor failed to show to the grand jury or to show at trial documents which the defendant had "filed or caused to be filed" that would favor the defendant's innocence; that he failed to turn over Jencks Act material (Claim 14(c)); that he falsely denied having Jencks Act material relating to Dr. Humberto Castro (Motion II,

Claim 5); and that (Motion I, Claim 12) he removed a favorable witness, Linda Anderson, from the jurisdiction and secreted her.

The court has reviewed the transcript of the trial (more than 1,000 pages). These questions were raised on direct appeal. The record abundantly supports the original ruling of the trial court denying the Jencks Act claims and the finding, implicit in that ruling, that no Jencks Act material was withheld. As to the alleged removal of the witness Anderson from the jurisdiction, the transcript (pages 785–787) shows that a stipulation was made during the trial with reference to her testimony, and that she was released from further attendance at the trial *with the consent of the defendant*! The petitioner has thus grossly misrepresented the plain face of the record. These claims were properly denied on the original appeal.

■ 2. *Violation of physician-patient privilege.*—Motion II, Claim 4, alleges violation of the physician-patient privilege by electronic surveillance of the petitioner's "medical" offices, by interrogation of patients about confidential matters, and by examination of the bodies of patients. Although petitioner and the co-defendants, in support of a discovery motion before trial, did contend their medical records had been tampered with, the United States Attorney denied any impropriety; the trial judge denied the motion for discovery; and the petitioner himself did not raise the alleged physician-patient issue on direct appeal. No claim, constitutional or otherwise, cognizable under § 2255, is shown.

■ 3. *Coercion of witnesses and use of perjured testimony.*—Vecchiarello alleges (Motion I, Claims 10(a) and (c); Motion II, Claims 1 and 2) that the prosecutor knowingly used perjured testimony of several witnesses; threatened the witness Sarnella with imprisonment and loss of his job if he did not perjure himself; and threatened the witness Fabianich that he would have the witness's brother put back in jail for parole violation if testimony favorable to the prosecution was not given. He also alleges (Motion I, Claim 10(c)) that the prosecution

attempted to intimidate Jackson Vance, a Maryland park police officer. These claims were not raised on direct appeal and no hearing was conducted under these § 2255 motions, even though, as reported above, Vecchiarello had subpoenaed witnesses for the scheduled hearing on Motion I, and had submitted affidavits in support of Motion II. They merit a hearing under § 2255.

■ 4. *Use of illegal wire tap evidence.*—Vecchiarello claims (Motion I, Claim 10(c), and Motion II, Claims 2 and 3) that the prosecutor used wire tap evidence illegally obtained on Vecchiarello's premises, and that though protesting to the contrary, the prosecutor used such evidence before the grand jury. These claims were not raised on direct appeal; they have not been heard, even though Vecchiarello had subpoenaed witnesses for the scheduled hearing; and they deserve a hearing under § 2255 to determine their correctness or falsity.

IV. *Attacks on the Trial Judge.*—Vecchiarello alleges bias by the trial judge in the entire conduct of the trial; specific claims are Motion I, Claims 13, 14(a), (b), (d), (e), (f), (g) and (h); Motion II, Claim 6, as follows:

1. *Violation of the privilege against self-incrimination.*—Motion I, Claims 13, 14(b) and 14(f), alleges that the judge allowed the prosecutor to use the defendant's examination before trial as a part of the direct evidence of the prosecution, thus violating his privilege against self-incrimination. Since the defendant never took the stand nor put his credibility in issue, this would be a serious assertion, if correct. It is not correct. This issue was raised and denied on direct appeal. The record shows that no pretrial deposition of the plaintiff was used; the depositions in question were those of the co-defendants Maturo and petitioner's brother, Louis Vecchiarello, which had been taken in a civil action in Maryland in 1969. As to that testimony, the judge gave a clear instruction (Transcript, 680) that the deposition evidence was not to be used against anyone except the deponent. None of the

testimony thus introduced even mentions the appellant, Anthony Vecchiarello. This issue was correctly decided against the petitioner.

2. *Prejudicial remarks.*—Motion I, Claim 14(a), alleges a prejudicial remark by the judge, who allegedly said in open court that he was disturbed about the continued practice of medicine by the defendants after their indictment. This issue was raised on direct appeal of the conviction and is mentioned on page 16 of appellant's brief. The court has reviewed the record, which contains no such statements by the trial judge and no reference to any such statements. This claim is without merit.

3. *Prejudicial jury instructions.*—Motion I, Claim 14(d), asserts that the judge gave an overwhelmingly prejudicial charge to the jury. The court has read the charge, which appears on pages 998 through 1040 of the transcript. The charge does not suffer from the infirmities alleged, and this issue was decided adversely to the plaintiff, and correctly, on direct appeal.

■ 4. *Error in correcting the stenographer's notes.*—Motion I, Claim 14(g), claims error because the trial judge made a correction in the stenographer's notes of the sentencing proceedings of November 15, 1970. This claim is without merit; the trial court has the duty and power to correct errors in the record. Fed.R.Crim.P. 36.

5. *Error in allegedly allowing a showing that defendant had been in jail.*—Motion I, Claim 14(f), alleges error in allowing the prosecutor to show or suggest to the jury that petitioner was in jail rather than in Mexico at the time he was allegedly pursuing his medical studies. It is not necessary to decide whether, if that had been done, it might have been error, because the record demonstrates that the judge did *not* allow the prosecutor to show the jury that Vecchiarello was in jail. The claim is entirely without merit.

■ 6. *Alleged personal bias.*—Motion I, Claim 14(e), alleges that the trial judge had a bias against the defendant based on personal experiences and contacts. Vecchiarello alleges failure to disclose that the judge's son was a member of a law firm which represented the medical society of the District of Columbia which had an interest in the outcome of the criminal case; that the lawyer son lived in the judge's home, creating "opportunity and inclination" to discuss the case and that "such discussions"[1] motivated the judge toward prejudicial conduct in defendant's case. Petitioner also alleges that the judge was biased against doctors "due to the fact that he blamed the death of his wife on incompetent medical practitioners."

This claim appeared first in the § 2255 motion of November 22, 1974. It has not been raised on direct appeal. It is not mentioned in the transcript of the trial, and the trial judge having been subpoenaed as a witness (presumably on this subject) had disqualified himself, so that he would be free to testify.

The allegations fall short of requiring a hearing. The progressive steps from "opportunity" to "inclination" to prejudicial discussion are purely speculative, and the recorded *actions* of the trial judge are so free from error or bias that success on this claim, even if it had been fairly alleged, appears extremely unlikely. Moreover, this claim is inherently inconsistent and conflicting, because it alleges the judge's bias both *against* doctors based on alleged experience with "incompetent medical practitioners," and *for* the doctors' medical society because of his son's relationship to it. These allegations do not require a hearing.

■ 7. *Alleged coercion of an attorney petitioner might have hired.*—Motion I, Claim 14(h), alleges that on July 17, 1970, after the trial but three months before the October 15, 1970, sentencing, the trial judge attempted to coerce Attorney Leroy Nesbitt by telling Nesbitt that he would not support him for a possible judgeship if he represented petitioner on his appeal. Nesbitt

---

1. In appellant's brief to this court this allegation of "discussions" is reduced to a "strong inference" that such occurred. Appellant's Br. at 16.

was not petitioner's trial counsel, but was, instead, a lawyer whom the appellant now contends he wished or might have wished to retain on appeal. The relevance of the incident presumably lies in its possible relation to the alleged bias of the trial court and also in the fact that it might, if true, constitute an independent denial of right to counsel or of due process. This claim, although mentioned in the appellant's statement of "facts," was not argued on direct appeal nor in any other petition, and it also, despite its doubtful merits, should be made the subject of a § 2255 hearing.

■ 8. As to petitioner's evidentiary contention that the trial judge's later disqualification demonstrates his earlier prejudice, the short answer is that it does no such thing, especially where, as here, the reason for the judge's recusing himself was to make himself free to respond to the petitioner's own subpoena and give testimony in the case. (Motion II, Claim 6.)

COMMENT ON NECESSITY FOR HEARING.—Reviewing a petition under 28 U.S.C. § 2255 is often laborious, time consuming and perplexing. Courts have not always agreed when and whether hearings are necessary before determination of such motions. The statute on its face is quite clear:

> "Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to *no relief*, the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing* thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." (Emphasis added.)

The motion and the files and records of this case do not "conclusively show that the prisoner is entitled to no relief . . . ." One is tempted to draw such a conclusion as to all claims simply based upon the obvious falsity of many of the claims and petitioner's obvious mis-statements of the record. However, although discretion may "in a proper case" be used to deny a hearing, *Kaufman v. United States*, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), this is not

such a "proper case." The sworn and unrebutted allegations as to which hearing is being directed are serious, and should be heard and dealt with on their merits. When a judge hears the evidence and finds the facts, a presumption of correctness can be indulged. When no hearing is conducted and a ruling is made contrary to sworn allegations, lingering questions remain. Moreover, if a hearing had been had upon these allegations at the trial level, it would have taken far less time and would have been far less costly than the processes of this appeal and the review of the massive record. Such cases are a test of the system, and the system must meet such tests.

IT IS THEREFORE ORDERED that the plaintiff be allowed to prosecute this appeal *in forma pauperis* and that the cause be remanded to the District Court for the conduct of an appropriate hearing upon the claims (1) that the prosecutor knowingly used perjured testimony and threatened witnesses (Motion I, Claims 10(a) and (c); Motion II, Claims 1 and 2); (2) that the prosecutor used illegal wire tap evidence (Motion I, Claim 10(c) and Motion II, Claims 2 and 3); and (3) that the trial judge attempted to coerce Attorney Leroy Nesbitt (Motion I, Claim 14(h)).

Although as noted above, this court has reached a different conclusion from that of Chief Judge Hart on the matter of the necessity for a hearing on some of the claims, it finds no impropriety whatever in Chief Judge Hart's refusal to disqualify himself.

The action of the District Court in disallowing all other claims is affirmed.

*Order accordingly.*