**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory LENNICK, Defendant–Appellant.**

**No. 93–30130.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 1, 1994.

Decided March 16, 1994.

Curtis L. Bevolden, Billings, MT, for defendant-appellant.

James E. Seykora, Asst. U.S. Atty., Billings, MT, George Darragh, Jr., Asst. U.S. Atty., Great Falls, MT, for plaintiff-appellee.

Before: GOODWIN, SCHROEDER and NORRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Gregory Lennick appeals his marijuana trafficking conviction following a jury trial. 21 U.S.C. §§ 841(a)(1), 846, & 18 U.S.C. § 2. He argues that the district court erred in denying his motion to dismiss his indictment; that the evidence was insufficient to support his conspiracy and manufacture convictions; that the district court erred in qualifying a police officer as an expert witness; and that the jury rendered an inconsistent verdict. We affirm in part and reverse in part.

## I. FACTS

On November 12, 1992, police officers executed a search warrant and discovered marijuana growing in the crawl space underneath Lennick's house. Officers seized forty-six live and two dead marijuana plants, a notebook, a triple-beam scale, incriminating photographs, ninety-seven grams of harvested marijuana, grow lights, potting soil and various equipment used to grow and consume marijuana. A grand jury returned a three-count indictment charging Lennick with (I) conspiracy to manufacture, distribute or possess with intent to distribute; (II) manufacturing marijuana with intent to distribute in excess of fifty plants; and (III) possession of marijuana with intent to distribute. 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2.

On the morning of trial, Lennick moved to quash the indictment because it had not been returned to a federal magistrate in open court as required by Fed.R.Crim.P. 6(f). The district court denied this motion. The government then presented testimony of various police officers and a forensic chemist who described the evidence found in Lennick's home; a utility company employee who indicated that Lennick's electric bill was higher than normal; and several of Lennick's acquaintances who stated that Lennick had sold or given them marijuana.

Lennick's defense was that he had grown the marijuana for his personal consumption, that no other individuals were involved in his marijuana cultivation, and that he had merely given marijuana to a few friends. He testified in his own defense, describing his heavy personal consumption and contending that he had never had more than fifty plants.

The jury convicted Lennick of counts I and II (conspiracy and manufacture) but acquitted him of count III (possession with intent

to distribute).[1]  In addition, the jury returned a special verdict, indicating that it found Lennick had manufactured or possessed more than fifty plants during the period charged in the indictment.  The district court sentenced Lennick to eighty-seven months imprisonment followed by four years of supervised release.  Lennick appealed.

## II.  FAILURE TO DISMISS THE GRAND JURY INDICTMENT

■  The government concedes that Lennick's indictment was not physically handed to a federal magistrate in open court and that the prosecuting attorney handed it to a court clerk when the court was not in session.  However, the government argues that Fed.R.Crim.P. 6(f)'s requirement that an indictment "be returned in open court" was satisfied because these events were "the functional equivalent of returning in open court" and because Lennick was arraigned in open court five days later.  Lennick insists that an indictment which is not physically returned in open court must be dismissed under "the leading case" of *Renigar v. United States,* 172 F. 646 (4th Cir.1909).

■  We agree that Fed.R.Crim.P. 6(f) requires indictments to be returned in open court, and that Montana's practice of handing indictments to the court clerk when court is not in session violates this rule.  However, contrary to Lennick's arguments,[2] errors in

the grand jury indictment procedure are subject to harmless error analysis unless "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair."  *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254–57, 108 S.Ct. 2369, 2373–75, 101 L.Ed.2d 228 (1988) (citing cases where the grand jury selection process was discriminatory).  "Dismissal of an indictment is considered a 'drastic step' and is generally disfavored as a remedy."  *People of Guam v. Muna,* 999 F.2d 397, 399 (9th Cir.1993) (quoting *United States v. Rogers,* 751 F.2d 1074, 1076–77 (9th Cir.1985)).  A defect in form which does not prejudice the defendant does not require dismissal.  *United States v. Mechanik,* 475 U.S. 66, 71–72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986) (dismissal not required where two witnesses appeared before the grand jury in violation of Rule 6(d)); *Breese & Dickerson v. United States,* 226 U.S. 1, 10–11, 33 S.Ct. 1, 2–3, 57 L.Ed. 97 (1912) (dismissal not required where only the grand jury foreman was present in open court).

· While no recent case has addressed the situation of an indictment being handed to a court clerk rather than returned in open court, the procedure employed in the present case was not "fundamentally unfair."  The record shows that both the grand jury foreman and the United States Attorney signed the indictment and that the court clerk filed it the day it was returned.  Lennick was

---

1. Lennick's judgement of conviction incorrectly states that he was convicted of conspiracy to distribute *cocaine,* which appears to be a typographical error.  Lennick's reply brief indicates that counsel is petitioning the district court to correct this error.

2. Lennick apparently argues that since a valid indictment is a jurisdictional requirement, we must reverse whether or not the error in the indictment process was harmless.  Some cases, including *Renigar v. United States,* 172 F. 646 (4th Cir.1909), support this argument.  *See also Glasser v. United States,* 315 U.S. 60, 65–66, 62 S.Ct. 457, 462–63, 86 L.Ed. 680 (1942) (rejecting petitioner's claim that the indictment was not returned in open court because the court reporter's notation indicated that it was returned in open court); *Glenn v. United States,* 303 F.2d 536, 539 (5th Cir.1962), *cert. denied,* 373 U.S. 916, 83 S.Ct. 1305, 10 L.Ed.2d 416 (1963) (indictment valid where government amended record to show indictment was returned in open court); *United States v. Kensil,* 295 F.2d 489 (3d

Cir.1961), *cert. denied,* 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962) (indictment valid where Clerk's minute sheet showed the court was in session on the date the indictment was returned).  In addition, most of the cases applying harmless error analysis to the indictment process address cases where the grand jury may have been influenced by improper evidence or improper prosecutor conduct.  *See, e.g., People of Guam v. Muna,* 999 F.2d 397, 398–99 (9th Cir. 1993); *United States v. Barrera–Moreno,* 951 F.2d 1089, 1091–93 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 417, 122 L.Ed.2d 137 (1992).

However, applying a harmless error analysis to Lennick's claim is more consistent with recent case law, including the cases cited in the text and cases holding that a defendant may waive his right to a grand jury indictment.  *See, e.g., Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); *United States v. Vecchiarello,* 536 F.2d 420, 423 (D.C.Cir.1976).

arraigned in open court five days later, and made no objection to the manner in which the indictment had been returned. The trial occurred within the timelines mandated by the Speedy Trial Act. Lennick has not shown that the grand jury was likely to treat any defendants unfairly or that they in fact treated him unfairly. The indictment adequately notified Lennick of the charges against him.

"[D]ismissal of the indictment is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia*, 487 U.S. at 256, 108 S.Ct. at 2374 (quoting *Mechanik*, 475 U.S. at 78, 106 S.Ct. at 945); *Muna*, 999 F.2d at 399. Lennick has made no such showing. The evidence found during the warranted search showed overwhelmingly that Lennick was growing marijuana in his home. Nothing suggests that the grand jury would have failed to return the indictment had the magistrate asked the grand jury foreman to hand it to the clerk in open court. A petit jury later found Lennick guilty beyond a reasonable doubt.

While we do not condone the failure of a court and its staff to comply with a simple rule, in this case, the error was harmless. *Muna*, 999 F.2d at 399.

## III. SUFFICIENCY OF THE EVIDENCE ON COUNT I (CONSPIRACY)

■ Lennick also argues that the government failed to prove he conspired to manufacture, distribute or possess with intent to distribute. In reviewing this claim, we must determine whether, viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bishop*,

959 F.2d 820, 829 (9th Cir.1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Although a defendant claiming insufficient evidence faces a formidable burden, the government proved only that Lennick possessed marijuana which he gave and sometimes sold to his friends and acquaintances. It did not show that Lennick conspired with these individuals or with any other individuals to manufacture, distribute or possess with intent to distribute. Thus, we reverse Lennick's conspiracy conviction for insufficient evidence.

■ Conspiracy, by its nature, requires the government to prove that at least two persons had an agreement to commit the underlying offense. *United States v. Hart*, 963 F.2d 1278, 1283 (9th Cir.1992); *United States v. Becker*, 720 F.2d 1033, 1035 (9th Cir.1983). The government must show "(1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense." *United States v. Taren–Palma*, 997 F.2d 525, 536 (9th Cir.1993). Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, *id.*, "simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient." *United States v. Melchor–Lopez*, 627 F.2d 886, 891 (9th Cir. 1980).

The government did show that Lennick sold or gave marijuana to other individuals. Both Lennick's brother-in-law and his childhood friend testified that Lennick sold or gave them marijuana. In addition, a notebook found in Lennick's home and Lennick's own testimony established that Lennick had sold marijuana to several other individuals and had used marijuana to make car payments.[3]

---

3. In addition, a photograph seized at Lennick's home shows his sister, Julie, cutting up a bud of marijuana. However, no evidence shows that she was cutting up this bud for distribution rather than for her own personal use. Finally, a second photograph depicts Lennick, Julie and several other individuals together with some plants, but Lennick testified that these were not his plants and that the photograph was taken some 8–10 years previously. The government offered no evidence establishing the date of this photograph and does not argue that the photograph depicts the plants concealed in Lennick's crawl space. Although one cannot determine the

■ However, this evidence proves distribution, not conspiracy. As most circuits have held, proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. *United States v. Lechuga*, 994 F.2d 346, 347–50 (7th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993); *United States v. Horn*, 946 F.2d 738, 740–41 (10th Cir.1991).[4] Rather, conspiracy requires proof of "an agreement to commit a crime other than the crime that consists of the sale itself." *Lechuga*, 994 F.2d at 347. Were the rule otherwise, every narcotics sale would constitute a conspiracy.

Nothing in the record shows that Lennick had an *agreement* with any of these individuals to manufacture, distribute or possess with intent to distribute. Both Lennick's brother-in-law and his friend denied knowledge of or participation in Lennick's marijuana growing operation. Both testified that they bought marijuana from Lennick for their own personal use. The government did not prove that Lennick's friends further distributed the marijuana, or even that Lennick sold them marijuana in a sufficient quantity to support an inference that they were going to further distribute it. *Mancari*, 875 F.2d at 105 ("In a conspiracy to sell drugs, the supplier must *know* he is supplying a dealer.") (emphasis in original). To show a conspiracy, the government must show not only that Lennick gave drugs to other people knowing that they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs.[5] Here, nothing in the record suggests that Lennick asked anyone else to help him distribute marijuana.[6]

Of course, Lennick's conspiracy conviction may still be valid, notwithstanding the lack of any evidence that Lennick conspired with any particular individual, if the government proved that Lennick must have conspired with some other individual (known or unknown) in order to accomplish his illegal purposes. *United States v. Howard*, 966 F.2d 1362, 1363–65 (10th Cir.1992) (upholding a conspiracy conviction where the facts, including the size of the cocaine shipment involved, indicated that the defendant must have conspired with other individuals in order to effect the transaction); *United States*

---

date of the photograph, the photo does not appear to depict Lennick's crawl space, as the individuals present are standing up and Lennick's crawl space was only 3' tall.

4. *See also United States v. Moran*, 984 F.2d 1299, 1302 (1st Cir.1993); *United States v. Fox*, 902 F.2d 1508, 1514–15 (10th Cir.), *cert. denied,* 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990) ("One who merely purchases drugs ... does not thereby become a member of the conspiracy" absent evidence that he "shared a 'common goal' with his alleged coconspirators to possess and distribute cocaine."); *United States v. Mancari*, 875 F.2d 103, 105–06 (7th Cir.1989) (subsequent history omitted); *United States v. McIntyre*, 836 F.2d 467, 471 (10th Cir.1987).

The Ninth Circuit has apparently not specifically addressed this point. Most of the published cases address a situation where the defendant concedes the existence of a conspiracy but challenges the sufficiency of the evidence connecting him to it. *See, e.g., Taren–Palma*, 997 F.2d 525, 536 (9th Cir.1993); *United States v. Buena–Lopez*, 987 F.2d 657, 658–59 (9th Cir.1993); *United States v. Penagos*, 823 F.2d 346, 348–50 (9th Cir.1987). These cases, however, imply that the rule in the Ninth Circuit is the same. *Cf. United States v. Medina*, 940 F.2d 1247, 1250–51 (9th Cir.1991) (knowledge of the objective of the conspiracy is an essential element of a conspiracy

conviction). We therefore hold that in the Ninth Circuit, as in other circuits, mere sales to other individuals do not establish a conspiracy to distribute or possess with intent to distribute; rather the government must show that the buyer and seller had an agreement to further distribute the drug in question.

5. *See, e.g. Lechuga*, 994 F.2d at 347 (agreeing that "the mere fact that [the defendant] sold [an alleged coconspirator] a quantity of cocaine too large for [the alleged coconspirator's] personal use, and therefore must have known [the alleged coconspirator] was planning to resell it, is insufficient to prove a conspiracy.... [The sale of] large quantities of controlled substances, without more, cannot sustain a conspiracy conviction."); *Howard*, 966 F.2d at 1364 ("The huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but *by itself* this is not enough to convict defendants.") (emphasis added).

6. The government contends that Lennick testified that he gave marijuana to his brother-in-law knowing that he was going to give it to Lennick's sister, Julie. However, even if such testimony would be sufficient to establish a conspiracy to distribute marijuana, nothing to this effect appears in the record.

*v. Valles–Valencia,* 823 F.2d 381, 382, *amending,* 811 F.2d 1232 (9th Cir.1987).

However, the record does not support such an inference. Lennick testified that he decided to grow marijuana on his own, that he had learned how to grow marijuana from a publication called "High Times," that he had purchased equipment from various vendors and plant sales people who had no knowledge of his intent to grow marijuana, and that he had obtained seeds from a mail-order vendor in Switzerland. Although the jury might properly have found that some of Lennick's testimony was not credible, nothing in the record contradicts his story of working alone. Lennick lived alone. He had no phone and little personal wealth. Neither the notebook nor any other evidence suggests that Lennick employed other individuals to sell or distribute marijuana for him or that other individuals helped him grow the marijuana plants. Both government witnesses and Lennick testified that Lennick was a heavy, chronic marijuana user with a small-time marijuana growing operation who gave and sold some of his harvest to his friends.

At most, the government proved that Lennick distributed marijuana; it did not prove a conspiracy.

## IV. SUFFICIENCY OF THE EVIDENCE ON COUNT II (MANUFACTURE)

■ Lennick also challenges the jury's finding that he manufactured more than fifty plants. In support of this argument, he notes that police found only forty-eight plants in the crawl space of his home, that two of these plants were dead, and that twenty were immature, starter plants. He argues that this evidence is insufficient to support a conviction of manufacturing of in excess of fifty plants. We disagree.

The government presented clear evidence showing that Lennick had possessed marijuana from other plants on other occasions dating back to a year before his arrest. In addition to the plants seized from the crawl space, police found ninety-seven grams of harvested marijuana in Lennick's kitchen. Photographs admitted into evidence show Lennick and other individuals with marijuana and drug paraphernalia and, according to the government, depict other marijuana plants growing in the crawl space. Police found scissors with marijuana residue in Lennick's house. Pots and other materials found in Lennick's home, as well as Lennick's electric bill, suggest that Lennick had grown and harvested other crops of marijuana. Several individuals, including Lennick himself, admitted that he had provided marijuana to other individuals on other occasions.

Certainly, Lennick may have possessed marijuana that he did not grow. However, circumstantial evidence, including Lennick's electric bill and the materials present in the crawl space, supports the government's argument that Lennick had been growing and harvesting marijuana for some time. Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction. *United States v. Reyes–Alvarado,* 963 F.2d 1184, 1187–1188 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 258, 121 L.Ed.2d 189 (1992). Viewing the evidence in a light most favorable to the government, the jury could have properly concluded beyond a reasonable doubt that Lennick had grown at least fifty plants over the past year.[7]

## V. EXPERT WITNESS

Lennick also contends that the district court erred in qualifying Officer O'Connell, one of the officers who searched his home, as an expert witness. We disagree.

**7.** Lennick's brief also states that "it was error for the court to sentence [him] on the assumption that he had grown 250 plants." We are unable to address this claim, however, because Lennick does not provide any supporting argument or the sentencing transcript. The presentencing report indicates that Lennick's base offense level was calculated under the assumption that he had 100–400 KG of marijuana. Since 50 plants would translate to 50 KG under the comment to

U.S.S.G. § 2D1.1, the court must have found at least 50 additional kilograms based on the trial testimony that various individuals had received marijuana from Lennick, the notebook and the evidence suggesting that Lennick had been growing marijuana for over a year. On the record before us, we cannot hold that these findings were clearly erroneous. *United States v. Hahn,* 960 F.2d 903, 907 (9th Cir.1992).

A district court's admission of expert testimony will not be reversed unless it is an abuse of discretion. *United States v. Taren–Palma,* 997 F.2d 525, 534 (9th Cir. 1993); *United States v. Rahm,* 993 F.2d 1405, 1409–10 (9th Cir.1993). Moreover, even if the court erred in qualifying Officer O'Connell as an expert, we will not reverse if the error is harmless beyond a reasonable doubt. *United States v. Feldman,* 788 F.2d 544, 545 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

Under Fed.R.Evid. 702, an expert may testify "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Rahm,* 993 F.2d at 1409. Officer O'Connell testified about the length of time it takes to grow a marijuana plant, the amount of marijuana it takes to make a cigarette and the amount of marijuana one could obtain from a single plant. This testimony was relevant to prove the government's claim that Lennick was growing more marijuana than he could consume himself. Such matters may be outside the scope of most jurors' common knowledge and are properly within the realm of expert testimony. *Cf. United States v. Bosch,* 951 F.2d 1546, 1550 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2975, 119 L.Ed.2d 594 (1992).

Lennick contends that the district court erred in qualifying O'Connell because O'Connell also testified about the evidence found at Lennick's house. Thus, qualifying O'Connell as an expert may have led the jury to place too much weight on O'Connell's nonexpert testimony. However, the district court properly instructed the jury as to the weight to be given an expert's testimony and Lennick conceded at trial that O'Connell accurately described the evidence found at his house. O'Connell's testimony did not turn "perfectly innocent items" into evidence of guilt. *United States v. Lim,* 984 F.2d 331, 334–35 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993).

While other individuals might be more qualified than O'Connell to testify about marijuana horticulture, O'Connell was not unqualified as a matter of law and Lennick's counsel brought out the limits of O'Connell's knowledge on cross-examination.[8] The district court did not abuse its discretion in admitting O'Connell's testimony.

## VI. INCONSISTENT VERDICT

Finally, Lennick contends that his conviction is invalid as a matter of law because the jury reached inconsistent verdicts. However, whether or not the jury's verdicts are in fact inconsistent,[9] inconsistent jury verdicts in a criminal case generally do not mandate reversal. *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Hart,* 963 F.2d 1278 (9th Cir.1992); *United States v. Valles–Valencia,* 823 F.2d 381, 382 (9th Cir.1987); *United States v. Horowitz,* 756 F.2d 1400, 1407 (9th Cir.), *cert. denied,* 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 60 (1985). Lennick has not shown that any exception to this rule applies to his case.

Lennick's conspiracy conviction is **REVERSED;** his manufacture conviction is **AFFIRMED.**

---

8. The district court found O'Connell was qualified based on his police training and his participation in six previous drug investigations. On cross-examination, O'Connell testified that he had personally grown marijuana himself (apparently for his own consumption) but was unable to answer several questions about marijuana horticulture.

9. The government also argues that the verdicts were not, in fact, inconsistent. Because Lennick's conviction is valid as long as it is supported by substantial evidence, whether or not the jury verdicts are internally inconsistent, we do not address this argument.