**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Fernando Alberto MENDEZ–
ARGUETA, Defendant–
Appellant.**

**No. 01–10313.**

**D.C. No. CR–00–05236–1–MDC.**

United States Court of Appeals,
Ninth Circuit.

Argued and submitted Dec. 6, 2002.

Decided March 20, 2003.

---

Before COWEN,* HAWKINS and W. FLETCHER, Circuit Judges.

MEMORANDUM **

Fernando Alberto Mendez–Argueta appeals from his conviction and sentence under 8 U.S.C. § 1253(a)(1)(B) for willful failure or refusal to make a timely application in good faith for travel documents necessary to effectuate an order of deportation. There was sufficient evidence of alienage to justify the denial of a motion for a judgment of acquittal, but the District Court did commit reversible error by allowing the introduction of inadmissible hearsay.

The government was required to prove alienage as an element of this crime. *See* 8 U.S.C. § 1253(a)(1). It therefore introduced several documents into evidence over Mendez–Argueta's objections, including the Notice of Intent to Issue a Final

Administrative Removal Order ("Notice of Intent") and the Final Administrative Removal Order under Section 238(b) of the Immigration and Nationality Act ("Final Administrative Removal Order"). The Notice of Intent informed Mendez–Argueta of his amenability to "expedited administrative removal proceedings" under 8 U.S.C. § 1228(b) as an alien convicted of an aggravated felony who was not a permanent resident of the United States. The Notice of Intent alleged that Mendez–Argueta was neither a citizen nor a national of the United States but was a native and citizen of El Salvador. Mendez–Argueta refused to sign or acknowledge receipt of this Notice of Intent. The box on the document indicating a contest to deportability on the grounds of United States citizenship or national status was also unmarked.

In the Final Administrative Removal Order, a Deciding Service Officer of the Immigration and Naturalization Service ("INS") made a number of findings based on the allegations in the Notice of Intent and the evidence in the administrative record. The officer specifically found that Mendez–Argueta was not "a citizen or national of the United States." The officer concluded that Mendez–Argueta was removable "as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii) of the [Immigration and Nationality] Act, 8 U.S.C. 1227(a)(2)(A)(iii)," and therefore ordered his removal.

The government introduced both the Notice of Intent and the Final Administrative Removal Order through the testimony

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

of Kevin Ralph Loker, an INS special agent. Loker testified that one of his duties is to determine whether incarcerated individuals are aliens. He described a program whereby various law enforcement agencies provide the INS office with leads regarding foreign-born individuals located within the office's geographic area. Loker was presented with the Notice of Intent, which he identified as a document "used on people that are not citizens and have no legal status in the United States that have been convicted of an aggravated felony." The government asked Loker whether a lead came into his office "regarding this particular defendant with that particular background." Mendez–Argueta made a hearsay objection, but the District Court immediately overruled this objection, without either the District Court or the government articulating any grounds for admissibility. The District Court directed Loker to answer the question.

Loker requested that the question be repeated, and the government asked him whether a lead came into the INS office "alleging that particular background to which you responded." Loker answered that:

> Yes, it did. Part of the way the program works, there is a program in effect where incarcerated foreign-born individuals are referred by the California Department of Corrections to the local servicing INS office. We then go out to the prisons, which are multiple in this area, and interview the inmate that they referred to us in an attempt to identify where they are born, their alienage and their legal status in the United States.

Mendez–Argueta moved, at the conclusion of the government's case and again at the close of all the evidence, for a judgment of acquittal under Federal Rule of Criminal Procedure 29 on the grounds of insufficient evidence of alienage. The District Court denied these motions.

■ We must review de novo a district court's denial of a defendant's motion for a judgment of acquittal. *See, e.g., United States v. Mendoza,* 244 F.3d 1037, 1042 (9th Cir.2001), *cert. denied,* 534 U.S. 897, 122 S.Ct. 221, 151 L.Ed.2d 158 (2001). The test is the same as the standard used for a challenge to the sufficiency of the evidence. *See, e.g., id.* " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir.1994) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Lennick,* 18 F.3d 814, 818 (9th Cir.1994)). We "must assume that the evidence at trial was properly admitted." *United States v. Vizcarra–Martinez,* 66 F.3d 1006, 1009 (9th Cir.1995) (citing *Lockhart v. Nelson,* 488 U.S. 33, 40–42, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988)). Although this case presents a close question under Ninth Circuit case law, we find that there was sufficient evidence of Mendez–Argueta's alienage to justify the denial of his motions for a judgment of acquittal.

In the Final Administrative Removal Order, the Deciding Service Officer found that Mendez–Argueta was not "a citizen or national of the United States." We have considered such a administrative finding as evidence of alienage in a subsequent criminal prosecution. *See, e.g., United States v. Galindo–Gallegos,* 244 F.3d 728, 732 (9th Cir.), *amended by* 255 F.3d 1154 (9th Cir.2001); *United States v. Quintana–Torres,* 235 F.3d 1197, 1200 (9th Cir.

2000); *United States v. Ramirez–Cortez,* 213 F.3d 1149, 1158 (9th Cir.2000). The government, however, acknowledges that an administrative determination of alienage in a deportation or removal order is insufficient, standing alone, to establish alienage in the criminal context. *See, e.g., Ramirez–Cortez,* 213 F.3d at 1158; *United States v. Ortiz–Lopez,* 24 F.3d 53, 55–56 (9th Cir.1994).

The government argues that additional evidence of alienage was introduced at trial. It asserts that Mendez–Argueta's failure to claim that he was a citizen or national of the United States during either the removal or state court proceedings as well as his refusal to accept service of or to respond to the allegations in the Notice of Intent constituted evidence that he was an alien or even gave rise to an inference of alienage. These facts, even if true, did not support any finding that Mendez–Argueta was an alien. An individual's refusal to testify during a deportation proceeding "may form the basis of inferences against him in the deportation proceeding." *United States v. Alderete–Deras,* 743 F.2d 645, 647 (9th Cir.1984) (citing *Bilokumsky v. Tod,* 263 U.S. 149, 154, 44 S.Ct. 54, 68 L.Ed. 221 (1923); *Cabral–Avila v. INS,* 589 F.2d 957, 959 (9th Cir.1978)). The government, however, points to no case that permits it to rely on this refusal to prove alienage in a criminal prosecution. The inference from silence is justified by the distinction between civil deportation proceedings and criminal trials. *See, e.g., id.* It would be inappropriate to apply any inference or otherwise treat Mendez–Argueta's silence as evidence of alienage in this criminal matter.

The government also relies on Loker's testimony regarding the lead received by the INS office. Loker testified about a program in which the office receives leads regarding foreign-born individuals from law enforcement agencies. He answered in the affirmative the question of whether a lead came into the INS office "alleging that particular background." Because the initial question mentioned "this particular defendant" and Loker asked this question to be repeated after the overruled objection, the second question and the answer clearly referred to Mendez–Argueta.

Mendez–Argueta argues that this testimony was incomplete and, at best, merely indicated an alienage allegation. Loker's testimony, lacking such details as a description of the criteria used by law enforcement agencies to identify foreign-born individuals, would be clearly insufficient by itself to demonstrate Mendez–Argueta's alienage. But this testimony must be considered together with the finding of alienage in the Final Administrative Removal Order. Viewing the evidence in the light most favorable to the government, we conclude that a reasonable factfinder could have found beyond a reasonable doubt that Mendez–Argueta was an alien. The District Court therefore properly denied the motions for a judgment of acquittal.

■ Even though sufficient evidence of alienage was presented at trial, Loker's testimony about the lead alleging Mendez–Argueta's alienage constituted inadmissible hearsay. Mendez–Argueta made a hearsay objection to the question regarding the lead at trial, and he now challenges the admission of this testimony based on evidentiary grounds as well as the Confrontation Clause of the Sixth Amendment. Because we can dispose of this question under the Federal Rules of Evidence, we need not address the constitutional issue.

A district court's construction of the hearsay rule is subject to de novo review,

and its decision to admit evidence under an exception to this rule is reviewed for abuse of discretion. *See, e.g., United States v. Olafson,* 213 F.3d 435, 441 (9th Cir.2000). An out-of-court statement "offered to prove the truth of the matter asserted," Fed.R.Evid. 801(c), is not admissible except as provided by the Federal Rules of Evidence. Fed.R.Evid. 802. Loker's testimony was clearly inadmissible insofar as it was offered to prove that Mendez–Argueta was an alien. The District Court, in overruling the hearsay objection, failed to refer to an exception or provide any other basis for the admission of this evidence. The government likewise has not argued that this testimony fell under a hearsay exception. It asserts at oral argument that Loker's answer was offered, not for its truth, but to explain how he came into contact with Mendez–Argueta. Although this purpose would be consistent with the overall course of Loker's examination, the government's argument must be rejected because the testimony was admitted without any apparent limitation, with the jury never instructed that it may consider such testimony only for a limited purpose.

Because a reasonable finder of fact could not have found alienage beyond a reasonable doubt absent Loker's statement, its admission was prejudicial and not harmless error. *See, e.g., United States v. Silverman,* 861 F.2d 571, 580 (9th Cir.1988). The conviction therefore must be reversed.[1]

"[W]here the evidence offered by the [government] and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial." *Lockhart v. Nelson,*

488 U.S. 33, 34, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). We already have concluded that the evidence offered at Mendez–Argueta's trial was sufficient to sustain his conviction. We therefore remand for a new trial.

REVERSED and REMANDED.

---

1. Because the District Court's evidentiary error mandates reversal, we need not reach the additional grounds for reversal raised by Mendez–Argueta.