**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Cesar VALDEZ–SANTOS, Defendant.**

**No. CR. S–02–104 LKK.**

United States District Court,
E.D. California.

May 17, 2005.

Carolyn Delaney, Phillip Talbert, Assistant U.S. Attorneys, United States Attorney, Sacramento, CA, for Plaintiff.

Fred Dawson, Esq., Sacramento, CA, for Defendant.

## ORDER

KARLTON, Senior District Judge.

A Fourth Superseding Indictment charged Cesar Valdez–Santos and Victor Hurtado in Count One with conspiracy, pursued in both Sacramento and Los Angeles counties, to manufacture and distribute methamphetamine. *See* 21 U.S.C. §§ 846 & 841(a)(1). Count Three charged Valdez–Santos and other "persons known and unknown" with conspiracy, pursued in both Sacramento and Los Angeles counties, to possess and distribute pseudoephedrine with knowledge that it would be used to manufacture methamphetamine. *See* 21 U.S.C. §§ 846 & 841(c)(2). Count Four charged Valdez–Santos with possession and distribution of a listed chemical, pseudoephedrine, in both Sacramento and Los Angeles counties, with knowledge that it would be used to manufacture methamphetamine. *See* 21 U.S.C. § 841(a)(2).

Trial commenced on January 25, 2005. At the close of the government's case, the court granted defendant Valdez–Santos' motion for acquittal as to Count One, based on lack of proof of that defendant's participation in the charged conspiracy. The defendant's motion for acquittal as to Counts Three and Four, or in the alternative, for a change of venue to the Central District of California, was taken under submission.

The case proceeded to trial and the jury found the defendant guilty of the remaining counts. The court then directed further briefing on the matters taken under submission. The defendant's motions are disposed of herein.

## I.

### THE EVIDENCE

Briefly summarizing, the evidence as to Count Three showed that Jose Magana, Jorge Ayala, and Jesus Arreguin, traveled from the Eastern District of California to the Los Angeles area for the purpose of purchasing pseudoephedrine in pursuance of their conspiracy to manufacture and distribute methamphetamine. On February 21, 2002, the defendant, Valdez–Santos, met with Magana and company, and sold them pseudoephedrine under circumstances from which a reasonable jury could infer that he understood that the pseudoephedrine was to be used to manufacture methamphetamine.

The jury also heard that on March 7, 2002, the defendant and Rios–Ramirez loaded boxes of pseudoephedrine from a warehouse located in the Central District of California, and unloaded it at a residence on Abbott Road, also in the Central District. Upon Rios–Ramirez' arrest, law

enforcement officers found 176 bottles of pseudoephedrine at the Abbott Road location, and determined that Rios–Ramirez was in possession of approximately 1.6 million dollars in cash. Following Valdez–Santos' arrest, the officers executed a search warrant at a storage locker associated with Rios–Ramirez' girlfriend, where methamphetamine was discovered.

## II.

### ANALYSIS

### A. COUNT THREE, CONSPIRACY TO DISTRIBUTE PSEUDOEPHEDRINE

The defendant maintains that there is no evidence to support his conviction of conspiring with Magana and company. He notes that the government maintains that his role in the asserted conspiracy was to deliver pseudoephedrine, and he contends that the seller of illicit chemicals is not a member of a conspiracy with his buyers. I must agree.

The law in this circuit is that "as most circuits have held, proof that a defendant sold drugs to other individuals does not prove the existence of a conspiracy. [citations]. Rather, conspiracy requires proof of 'an agreement to commit a crime other than the crime that consists of the sale itself.' " *United States v. Lennick*, 18 F.3d 814, 820 (9th Cir.1994)(quoting *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir.)(en banc), *cert. denied*, 510 U.S. 982, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993)).

The government seeks to distinguish *Lennick* in two ways. First, it contends there was a conspiracy between Rios–Ramirez, Arreguin, Magana and Ayala to manufacture and distribute methamphetamine, which this defendant joined when he obtained the pseudoephedrine from Rios–Ramirez to deliver to Magana and company. Second, the government appears to argue that *Lennick* is limited to

distribution of prohibited material to ultimate users. Neither argument lies.

■ As to the argument of the conspiracy between Rios–Ramirez and Magana and company, the argument falters on the *Lennick* principle. Rios–Ramirez' function was to supply pseudoephedrine as a seller. There is no evidence to suggest that he had any interest whatsoever in any profits to be made by the methamphetamine manufacturer or its distribution. There can be little doubt that Rios–Ramirez fully understood that he was arranging for a sale for illicit purposes. Nonetheless, under the evidence, he had no involvement in the manufacture and distribution of methamphetamine. Indeed, once the pseudoephedrine was sold, the seller would not care if the conspirators decided to make cold medicine instead of methamphetamine. As the Circuit has explained in a case subsequent to *Lennick* explicating its principle, in *Lennick* "we held that without an agreement with those people for further distribution, selling to them, even knowing that they would further distribute the drug did not establish a conspiracy." *United States v. Herrera–Gonzalez*, 263 F.3d 1092, 1097 (9th Cir.2001).

The second argument, namely that *Lennick* applies only to sales to ultimate users, is equally unavailing. The quotation from *Herrera–Gonzalez*, noted above, disposes of that argument. Moreover, the *Lechuga* case, relied upon by the Ninth Circuit in *Lennick*, also undermines the government's argument. As the *Lechuga* court said, "the mere fact that [the defendant] sold [an alleged co-conspirator] a quantity of cocaine too large for 'the alleged co-conspirator's' personal use and therefore must have known [the alleged co-conspirator] was planning to resell, is insufficient to prove conspiracy ... [the sale of] large quantities of controlled substances, without more, cannot sustain a conspiracy conviction." *Lechuga*, 994 F.2d at 347.

I thus conclude the defendant's motion for a directed verdict as to Count Three must be granted.

## B. COUNT FOUR, POSSESSION

Counts Four, the possession charge, is attacked by the defendant on the ground that venue did not lie in this district, but lies only in the Central District of California.[1] Although this issue is, to say the least problematic, I conclude that this argument also has merit.[2]

The Constitution of the United States provides that a defendant has a right to trial "by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." U.S. CONST. Amend. VI; *and see* Fed. R.Crim.P. 18 ("unless a statute or these rules provide otherwise, the government must prosecute an offense in the district where the offense was committed....")[3]

It is said that "in the federal system ... venue is not simply a prerequisite that the defendant may choose to challenge pretrial; it is viewed as part of the case that the prosecution must prove at trial." 4 LaFave, Israel & King, *Criminal Procedure*, 499–500. It is the court's view that, as a factual matter, the evidence positively demonstrates a lack of venue. Put directly, while the evidence more than supports a finding of possession with intent to distribute, that possession occurred only in the Central District.

■ Although the evidence is clear, the government seeks to avoid the conclusion on legal grounds. It asserts that venue was proper because Valdez–Santos was guilty of aiding and abetting Magana and company's possession in the Eastern District. *See* 18 U.S.C. § 2 (one who aids or abets an offense is "punishable as a principal"). The issue is difficult and the result less than certain.

■ Possession must be prosecuted in the district in which the possession occurred. *United States v. Mendoza,* 108 F.3d 1155, 1156 (9th Cir.1997). When Congress has not specifically defined where a crime should be deemed to have occurred, the " 'locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.' " *United States v. Cabrales,* 524 U.S. 1, 5, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (quoting *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946)). A problem arises, however, when the acts constituting a crime are committed in more than one state or district. To address these multi-district crimes, Congress enacted 18 U.S.C. § 3237(a), which provides that continuing crimes may be tried in any of the venues in which a part of the crime was committed. "Under this statute, venue is constitutionally proper in any district in which a part of the crime was committed. '[W]here a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.' " *United States v. Rodriguez–Moreno,* 526 U.S. 275, 281,

---

1. The government candidly admits that defendant's motion at the close of its evidence was timely. Gov't Oppo. at 3–4.

2. Because the evidence of the defendant's possession in the Central District is overwhelming, the court raised the issue of harmless error at oral argument. The government eschews reliance on that doctrine, and the court does not consider it further. Moreover, it is clear that the defendant's insistence on the motion is based on his belief that in a trial in the Central District there is a greater chance of Latinos on the jury, which he perceives to be an advantage.

3. The court confesses to some puzzlement as to how a statute or rule could override a constitutional provision, but this case does not involve such a question.

119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (quoting *United States v. Lombardo,* 241 U.S. 73, 77, 36 S.Ct. 508, 60 L.Ed. 897 (1916)). In sum, as a general proposition, the government's contention that a continuing crime, such as possession, may be prosecuted in any district where the possession occurred is well taken. Given that an aider and abetter may be tried as a principal, it would appear sensible to hold that an aider and abetter to a continuing crime may be tried anywhere a part of the crime occurred. *See, e.g., United States v. Buckhanon,* 505 F.2d 1079 (8th Cir.1974). It appears to the court, however, that the doctrines of continuing crime and aider and abetter status do not end analysis in the instant case.

■ In the matter at bar, the self-evident proposition that a defendant may not aid and abet himself comes into play. It is clear that Valdez–Sanchez is guilty of the crime of possession with intent to distribute, but it is only in connection with that crime that he delivered drugs to Magana and company. What seems equally clear is that his connection with the crime ended in the Central District. It seems to this court that it stretches the notion of aiding and abetting out of all context to hold that a defendant guilty by virtue of his own conduct of a crime in one district, is also an aider and abetter, and thus may be tried in another district by virtue of the effects of his criminal conduct in another district. *See United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998) (crime committed in one district

with effects in another is not a basis for venue);[4] and *United States v. Walden,* 464 F.2d 1015, 1019 (4th Cir.1972) (venue depends on status as principal or accessory).

Moreover, it seems to this court that the same analysis which contraindicates that a seller is a co-conspirator, is equally applicable to the issue of aiding and abetting. Sellers of illicit chemicals have no financial or other interest in what the purchaser does with the chemicals. While it is true that for the sale of pseudoephedrine to be criminal, a seller must know of the buyer's criminal intent, in no real sense does he join in that purpose. Once the pseudoephedrine has been sold, the seller is indifferent to whether in fact it is employed for its illegal purpose, or whether the buyer, having found God, flushes it down the toilet. Put somewhat differently, in this case the seller possessed with the intent of distributing, while the buyer possessed with the intent of manufacturing; this disparity would seems enough to suggest expansion of the notion of aiding and abetting for purposes of venue in cases such as this, is inappropriate.

■ Moreover, a principle of statutory construction seems to point to the same conclusion. It is well-established that "a more specific statute will be given precedence over a more general one. . . ." *Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Here, a specific statute denounces possession with the prohibited purpose, while 18 U.S.C. § 2 is a general statute applicable to all crimes.[5]

---

**4.** There is no doubt that *Cabrales* is not directly on point. The defendant there was not charged with aiding and abetting, but rather as an accessory after the fact. Nonetheless, where, as here, the defendant is a principal in his own right, holding that he is also an aider and abetter seems incongruous.

**5.** A second cognate doctrine arising in civil law may also have some application. Where

Congress specifies a remedial scheme in a statute, it is unlikely that other remedies provided in a broader statute also apply. *See, e.g., Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 13, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). A powerful rebuttal argument, however, is that where Congress actually denounces specific conduct in two statutes, the government enjoys discre-

The court, like the government and the defendant, has not found any case directly on point. Nonetheless, it must rule. For all the above reasons, I conclude that venue for the possession count lies in the Central District of California, and accordingly, defendant's motion for a new trial and transfer must be granted. *United States v. Ruelas–Arreguin,* 219 F.3d 1056, 1060 (9th Cir.2000).

For all the above reasons, the court ORDERS as follows:

1. Defendant's motion for acquittal as to Count Three is granted.[6]

2. Defendant's motion for a new trial and transfer to the Central District of California as to Count Four is granted.

IT IS SO ORDERED.

tion as to which statute it will proceed under. Under such circumstances, the fact that it elects to proceed under a statute which avoids the Sixth Amendment imperative may be thought to be without significance. That argument is not persuasive as to the matter at bar. The argument begs the question, i.e. prosecutorial discretion only exists where Congress has enacted the predicate condition, and this case asks whether, by virtue of the application of *Lennick* to aiding and abetting, that prerequisite exists.

6. Of course, given the fact that the government tried a conspiracy with Magana, nothing prevents re-indictment for the conspiracy with Rios–Ramirez and Damani in the Central District.